As I think everyone knows, you are given 15 minutes on each side and as the appellant you are free to allocate that, split that up any way you would like, but please let us know how much time you want to reserve so we can let you know when it's about that time. I'm Christine Neal. I'm here for Joshua Dixon. Good afternoon, your honors. I would like to reserve a few minutes for rebuttal. May I please court Christine Neal from the Office of the State Appellate Defender on behalf of the appellant defendant Joshua Dixon. 15-year-old Dixon was charged as an adult and found guilty of Nicolai Shedco's murder. In a case like Dixon's, where it is undisputed that Shedco's murder was not gang-motivated and there is no physical evidence linking Dixon to the crime, no confession, and not one uninvolved unbiased civilian witness, the trial judge erred by failing to take control of what became pervasive gang evidence, presumably allowed to explain recanting witness testimony. Your statement right there presents itself as if this was a direct appeal. And in fact, he did have a direct appeal. And we addressed a very similar issue on direct appeal. And why is this issue still a viable one for Mr. Dixon, given what occurred on direct appeal? Well, you are right, actually. The three people here today, as I'm sure you all know, decided this case on direct appeal. And Joshua Dixon's claim that he is raised in his pro se post-conviction petition is distinct from the issue that was decided on direct appeal, namely because he specifically names Detective Munoz as being distinct from the other witnesses that were allowed to testify about gang evidence at trial. Those witnesses, Your Honors, were, the state said from the very beginning, that if any of the civilian witnesses, and namely the crowd witnesses, took the stand and recanted their testimony, they wanted to be able to enter into evidence, impeachment information about threatening gang threats that were made. All right. Once we get to that point, once we acknowledge that on direct appeal, a gang issue was raised and addressed in Justice Gordon's opinion, and now you've got a gang issue on direct appeal. You claim that because Detective Munoz was not named in the direct appeal issue, that the issue before us is distinct. What about the gang issue having been before the jury as to the other witnesses, and why does Detective Munoz's testimony really amount to anything, given that the gang issue was fully disclosed to the jury by way of the other witnesses? Well, if I may call to your attention that nowhere in addressing the gang issue on direct appeal was Detective Munoz mentioned. And second of all, Detective Munoz was an expert witness. He came under the banner of a badge of law. He came behind the shield and was able to say to the jury, I've worked in this area for 20 years. I'm going to pull together these four or five witnesses who were less than credible, given their impeachments and given other things, other crimes that were brought out against them, and say to the jury that it is my opinion, my expert opinion, that Joshua Munoz is not a member of the gang. I know the way the gang works. I know what his job and position is within the gang. And in fact, Detective Munoz did not limit his testimony to things that he knew about the traveling vice lords. He talked about the gangster disciples. He talked about the Latin kings. He talked about the Ambrose, the two fours, the different factions of the traveling lords. He talked about the gangs. He talked about the gangs. He talked about the gangs. He talked about the gangs. And he did that before the jury. The judge himself said, right when defense counsels raised again their objection to Detective Munoz's expert testimony and said that gangs are permeating this trial, the trial judge himself, he said the testimony is as it is at this point. You have recanting witnesses. And the state, in an effort to explain why recantation is occurring not once, not twice, but I think at least three times, I think the state has the leeway to explain to the jury why recantation is happening so often. And they tried to do that by way of Detective Munoz's testimony as an expert as to how gangs operate. Your Honor, we expect, and in fact we often tell the jury to use their common sense when they're deciding cases. And this jury had already heard from, as you said, it was four witnesses actually who recanted. And they heard a ton of information about the traveling vice lords. It's perfectly clear. This is before Detective Munoz takes the stand. Correct. All before Detective Munoz. The jury would not have had any difficulty in pairing together the threat that the traveling vice lords held to many of these individuals that took the stand and testified. Then that really draws the question, where's the prejudice? Based on the evidence, where's the prejudice? Based on Detective Munoz's testimony alone. If gang testimony came out repeatedly by way of the other witnesses, and those issues were addressed on direct appeal, why should Detective Munoz's testimony rise to a constitutional issue in a post-conviction proceeding? Well, if I may quote you from the direct appeal, Your Honor, Morgan Gordon. You said this is a case where the jury is not the gang's state of mind, but the witness's state of mind. And that's exactly what should have been allowed to be presented to the jury. What the witnesses were feeling. The reasons why they recanted. The reasons why they may have been afraid with alleged leaders of the traveling vice lords in the courtroom. This issue was practically beaten over the head. The jury knew, you know, what was the problem. And if I may bring up, in addition to Detective Munoz being an officer of the law, and being able to bring in unbiased, uninvolved testimony to present to the jury about this gang that occupied the building 2015, Detective Munoz also, so we have the witnesses saying that Joshua Dixon is a gang member. We're having Detective Munoz take the stand and say Joshua Dixon is a gang member. Detective Munoz's testimony was presented to the jury. And then they presented the detective photographs of the defendant's body on his back of an alleged gang tattoo. And had him examine it and point out to the jury how this was gang related. And then published it to the jury. What was gang related? The tattoo. Okay. And in addition to showing defendant's tattoo, they also saw co-defendant's two tattoos. So this is multiple layers. So how did the co-defendant get off? Was that a jury or a bench? It was a jury. So you found not guilty. Yes. And how does that cut? Well, I have to say I'm a bit confused by that. And I do think, I didn't have the privilege of reading over his record, so I'm not sure. But to the extent that you're claiming prejudice by Detective Munoz's testimony, that prejudice seems to only have dragged on. And I'm not sure that the jury traveled against Mr. Dixon and not the co-defendant, because the co-defendant was found not guilty. Yes. You know, I did read his record, because they were tried simultaneously. But there were different things that were brought out. But a number of the recanting witnesses didn't necessarily identify co-defendant Davis as being the link passing the heater or the gun or whatever from the trial. And I can tell you, Your Honor, that the issues that were presented to the jury, their mind was just as clouded as the trial court's was here. And if I can also point you to the fact that, and I believe you are well aware of this, but I find it important in that statement that I was quoting from the judge that he said, the evidence is as it is at this point. And it's going to have to be addressed sometime later. And again, and I know that you could say that could go to the recanting witnesses' testimony, which you did address on direct appeal. But again, when the judge was responding to defense counsel's motion for new trial, where he specifically raised the improperness of the gang testimony, the expert testimony that was presented specifically, which I think makes it distinct from the recanting witnesses. He again says that these allegations do in fact set forth the grounds that Mr. Dixon may well argue on appeal, and properly so. And that goes directly to Joshua Dixon's claim in his pro se post-conviction petition that his appellate counsel was ineffective for solely attacking the recanting witnesses' testimony. Detective Munoz didn't recant any testimony. He did not recant any testimony. He did not recant any testimony. He did not recant any testimony. Detective Munoz took the stand and he was able to tell the jury about the meetings that he had with these prior witnesses, these witnesses at the station house. He was able to talk about the investigation of Shedco's murder. But what was not necessary because the jury, the jury using their common sense would have been able to tie it already to the information brought in by Detective Munoz that Detective Munoz, in his professional opinion, knew Dixon to be a gang member. And that's what I was going to ask as well because when you say he testified as an expert, he presumably testified as not only an expert but as an individual with knowledge of some of the facts of the case which made him a dual witness in the sense that he knew that Dixon was a gang member. And I don't see any, is there a problem with that? I think it just served to continue to bolster the state's evidence of dirtying up the murder and the people that were involved in this crime with the gang. As I said in my opening brief, almost everyone that was part of that scene that night, including the young Buchanan children who I guess were also present, were in some way tied to the gang that controlled that building. I do want to ask you because you brought up the trial judge's comment about the issues being items that should be addressed on appeal because they had basis in the record and they certainly had been preserved. And I thought you were going to go from there to say that the issue you're addressing or you're raising now in the post-conviction petition is not frivolous in a fee sort of way because the trial judge himself recognized that the question of the expert witness and his testimony and whether it should have gone before the jury seemed to be an arguable one. Your Honor, we are definitely maintaining that the fines and fees that were levied against Mr. Dixon should not have been levied because his claims are not frivolous. And the reason why I didn't focus on that necessarily is because I, you know, if I'm going to take 15 minutes of your time to argue the facts, they definitely better not be frivolous. And also, as we both know, the fines and fees issue is presently before the Illinois Supreme Court. But this is Dixon's first petition. And as you stated, you know, recoding the trial judge, Justice Tumen, they are not frivolous. In fact, and I have some difficulty with the five different categories or criteria. And it seems like all five or the last four could certainly fit under one. And why shouldn't fees be assessed every time a post-conviction petition is dismissed in the first stage? Because it would necessarily mean that it lacks arguable basis either in law or fact. I mean, that is the standard. And if you dismiss in the first stage, that would certainly be the case. But yet, there are these four additional criteria. And one in particular, number four, seems to suggest that if you have an evidentiary support in the record, and for the allegation that you're raising, then that might be enough to avoid a fee assessment. And certainly in this case, there seems to be acknowledgment by the trial judge, the first trial judge, that there was an evidentiary support for the claim, although it wasn't raised on direct appeal. You're seeking to do so now. I agree entirely with your argument. Number four, I have listed as Not an argument. I'm just raising it as a question. Your statement, yes. I agree with Your Honor. I believe that it is, you know, it does have evidentiary support. And the problem is, is that we allow all defendants to have the statutory right to file, you know, a postconviction petition. And we also agree that often the defendants and petitioners who are filing this don't necessarily have any legal background, might be illiterate, and might be trying in their best way to put forth their claims to this court. And if you have the statutory right to file the petition, each time you file the first one, it can't automatically, you know, have fines and fees attached to it. That is our belief, and I hope that that is found in the court. We'll give you a couple of minutes to reply. Thank you very much. Mr. Walters? May it please the Court, this is the State's Attorney John Walters for the people of the State of Illinois. I want to start off with the raised judicata argument, because essentially that argument decides this case. Well, except that they're seeking to separate this precise issue by virtue of the individual involved, as opposed to the general gang-related issue addressed on direct. That is what the defendant is attempting to do. I would point this court out to the case of People v. Wilder, which I cited in my brief. Very similar situation took place in that case. In that case, they raised the gang evidence as on direct evidence. And then on PC, the defendant specifically objected to a subset of that argument. He specifically objected to the fact that his gang nickname, which was Big Murder, was introduced in the case. When you say subset, let me ask you this, because it seems to me that the issue raised before us that's founded on and grounded on the expert nature of Detective Munoz's testimony could not have been raised on direct evidence. It could not have been raised on direct appeal in light of the witnesses, the testimony or the gang-related testimony that was addressed by the witnesses, because they didn't address the expert. They didn't testify as an expert. Only Detective Munoz did. And so to that extent, I'm not sure that this is a subset of the gang-related issue. There certainly might fall under gangs, but they're sort of side-by-side as opposed to underneath one or the other. And to that extent, maybe res judicata doesn't wholly apply. What I would point out specifically to you, though, is there seems to be a hangup about a gang expert, that somehow that doesn't apply. Because there is a difference, isn't there? I mean, when we're talking about what is presented to the jury, the sort of added weight to such a witness testifying before the jury, this is an expert, this is an individual that you can rely on his testimony as opposed to one who's a lay witness that can be challenged on cross-examination based on what that person was saying. There is a difference, isn't there? How a jury might perceive someone? Not on the facts of this case. I want to point out that in your direct appeal, you went through and you discussed Detective Munoz' testimony, and you differentiated the point where he was talking about, which actually happens to be the bulk of his testimony, was his work as a lead investigator in this case. And he talked to two of the witnesses, and actually, this is important. Because defendant's argument sort of hinges on, well, it was sufficient that the witnesses testified to their recantations. Well, that doesn't work, because the only way that Ernest Catchings' recantation and the only way that Jason Munson's recantations came before this jury was through the testimony of Detective Munoz, because he took statements from them. And he also testified to specific incidents of gang intimidation that both had to put up with in this case that led to both of them changing their testimony. I mean, this is an extreme case. You must admit, this is an extreme case of gang intimidation. And I'm not talking about the evidence that was admitted. I'm talking about what happened in this case. This is extreme. There were four eyewitnesses to this case. One left state. The other three were all subjected to such intense intimidation threats that they changed their testimony. And in addition to those three, there was a fourth witness, an occurrence witness named Sharonda Foy. She was actually the girlfriend of the defendant in this case. Her testimony was changed. That was after a bunch of girls came together, very much supported by gang leaders. And we know that they were supported by gang leaders, because Detective Munoz was the one that tied those people to this gang. So it's all really part and parcel of the gang evidence which this court enumerated in its appeal, in its opinion. And I just want to point out, when you analyze the issue, you didn't differentiate, you didn't spell out this or that. You talked about the basic standard for the relevance of gang evidence. And that's what you listed right here on page 550 of the opinion. And that really goes to my next question, and that concerns what's your fallback position? Let's say we say, you know, it could fall under res judicata, but we're not going to decide it on res judicata. What's your next best argument to affirm? Is it somewhat related to, you know, all the other gang testimony having already been introduced to the jury? And really, what did expert witness Munoz really add? Well, it's certainly an argument that I've got there. But even before I get there, I want to get to forfeiture. Because, again, if this issue is procedurally barred... But does forfeiture apply to what a lawyer does? I mean, he can't forfeit through his lawyer. And to the extent that the lawyer decided what issues he was going to raise, so long as they were preserved at trial, you know, that burden or that onus should fall on the attorney and not on the petitioner. Let's keep in mind there's two different types of forfeiture. And the forfeiture that you're talking about, that's when the defendant sits down with pen and paper in the penitentiary and writes out his PC petition. And he's alleged to have forfeited an issue that's why we have this escape hatch called ineffective assistance of appellate counsel. And we say, well, defendant can't have forfeited the issue. That's not what we're talking about here. And let's make that crystal clear. The kind of forfeiture that's involved here is, here's defendant. He wrote out a petition. It's in the common law record. And I want to reference this specifically because it's really important. But he's got his petition that he filled out. And now we've got the defendant on appeal from the dismissal of the PC petition. And they're raising a different argument from what was raised in this PC petition. And why do I say different? You don't have to take my characterization of it. Please, just look at the PC petition. Because you can look at it and you can disagree with me, but my recollection is the defendant was pretty well aware of your opinion. And he took pains to actually point out that Mr. Perlman, who was the defense attorney on the direct appeal, actually raised an issue of gang evidence. So he doesn't go about attacking Detective Munoz for bringing in gang evidence in this case. He attacks Detective Munoz's qualifications to testify as an expert. And every one of his claims ultimately goes to that issue. He raises some discovery issues related to that. He says, well, we failed to tender our intent to call him as an expert. We failed to tender information and evidence relating to his expertise, his qualifications. Everything went to testifying as an expert. I don't recall whether they were a trial or not. Were they? That's just another forfeiture. The bottom line here is, though, defendant attacked Detective Munoz's qualifications. He attacked this issue a certain way in his PC petition. He attacked it on the basis of the qualifications of Detective Munoz to testify as an expert. Now, on appeal, we've got a gang evidence case. And I just want to point you to something in the defendant's reply brief, which kind of seals the deal. If you turn to page 9, they wrote a footnote. And in the footnote they say, essentially defendant didn't assert his counsel's ineffectiveness in his pro se petition for failing to challenge Detective Munoz's qualifications as an expert. They're saying that's what he did raise in the PC petition. But that issue is not raised in the present appeal. With that, I submit that this issue is fully forfeited. Except much like res judicata, that it could be in the eye of the beholder, when we're talking about a PC petition filed by a lawyer, and we allow the review by an attorney to amend it or to clarify it or to give it further support, a gist is all you really need. And that gist may cover a related issue that maybe isn't, doesn't fall entirely within the complaint that he put in his petition. But it's close enough that we allow it to go forward. Once he has a lawyer and he doesn't specifically raise it, then it becomes a different issue. But I'm not sure that we should rely on clear forfeiture just because he didn't put it in the legal terms that a lawyer might have. I understand what you're saying. But that type of argument usually goes to a response that we file to the defendant's PC petition saying, well, this is poorly drafted or you failed the stated claim here. Again, I just ask you to read his petition. Because this defendant actually knew what he was doing. That's my point. And whether it could have been stated better or more artfully, that's not the issue. I don't care how artfully it was stated. It is clear from the way that this defendant was going about writing his PC petition that he had read your opinion. He knew gang evidence had already been decided. He didn't want to go there. He wanted to attack Detective Munoz in a different way. He did. And the defendant, even on appeal, acknowledges that he did that. He's acting much like a lawyer. Let's go to the fee question. Because it does cause us some concern. But let me ask you just broadly. If we uphold the fees that Judge Ford entered against the petitioner, does it necessarily follow that we have to, of course, uphold the $100 that your office is claiming for filing the appeal and then $50 for granting oral argument? So that we have to add, in fact, a $100 that we have to add $150 to what Judge Ford assessed against the petitioner. Are you referring to the $50 that we generally request on oral argument? What you say in your brief. Right. Right. Yeah, I would say that, under my understanding of the statute, that both are assessed against the defendant. Let me ask you regarding what the criteria is in the statute. And I don't understand where 2, 3, 4, and 5 come in if 1 is sort of captures everything there is. And that's on page 33 of your brief. Thank you. With respect to this particular issue, I just want to point something out. And again, it goes back to the common law record. If you look on page 108, you have Judge Ford's findings in this case. He entered a separate order, right? That have been played out in the briefs are sort of generic in that they talk about what generally would happen if a PC petition is found to be frivolous and path without merit, which is going to happen in every case of a first-stage dismissal. But Judge Ford did something really interesting in this case, and that is he made a specific finding in this case. And he specifically found both element 1 under section 22-105 of this fee statute. But element 1 is distinguishable from his legal ruling that the PC had to be dismissed, isn't it? Does it say anything more? I think actually in light of Hodges, 1 and Hodges are essentially the same. So it may be that the General Assembly, that's the rule of the people of the state of Illinois, is that this should apply in every first-stage dismissal. Except maybe when 2, 3, or 4, or 5 apply, and if 4 applies, that there is evidentiary support for an allegation that's being made, then that might be the sort of escape hatch to avoid fees being assessed. Because it refines number 1 still further. Well, except that Judge Ford found both of these factors. He found that the allegations, and if you can just, it's page 108 of the common law record. We don't have the common law record. Oh, sorry. I'm almost certain it's 1 and 4 that he specifically found. So he specifically negated that particular element. I mean, you're concerned maybe that there's a potential factual or evidentiary support for that? That's something I want to talk about, too. You only have two minutes. We talked a little bit about Justice, formerly Judge Tuman's ruling in this case. And this sort of characterization made about how he's sort of washing his hands. He thinks there's a real issue here, but he wants to wash his hands of it. Well, that's a characterization of it that I submit is not really borne out by the record. And it's a characterization that's based on an accurate rendering of actually what happened in that case. And it is, Judge Tuman said, look, you've presented this, and at one point, the co-defendant's attorney actually said something about there's glaring problems in the case. But the glaring problem that she specifically pointed to wasn't gang, per se. What she specifically pointed to was that one of the people that had been beating on Sharonda Foy, either throwing bottles at her or cracking on the hood of the car with the golf club, she was one of those girls, her point was that there was a glaring problem because it was inconsistent because that witness had actually cooperated with our investigation at some point previous to that. So the glaring problem that Judge Tuman is referring to, or the problem that he actually mentions, he says problem, is referring back to this glaring problem that co-defendant's counsel is bringing out with respect to this particular witness. So I think really what needs to happen in this case is just careful attention to the record and this Court's opinion. And I appreciate that. Unless there's any questions, the people of the State of Illinois respectfully request that this Court affirm the dismissal of the PC petition and the assessment of costs and fees. Let me ask you one question. Yes. Did the defense stipulate to the officer's expertise as an expert? Dixon's attorney did. Both did eventually, but co-defendant Davis's attorney asked to have a separate voir dire of the officer. And Dixon's attorney asked to have that done outside the presence of his jury. Well, if Dixon's attorney stipulated to his qualifications, do you think that that may some way affect your argument here? I don't believe so, Your Honor. I might be missing exactly what you're saying, but I believe that Detective Munoz was an expert in on-gang evidence. But what I don't think is that it needed to be brought before this jury. I think that what needed to be brought before this jury was, and we are not challenging, his investigation portion of the witnesses that had just testified. And that was all brought in. And that's very separate from his expert testimony, which on page 97 of the record, you see that that's when he is sworn in as a witness. And the flavor of the testimony changes. It goes away from the conversations that he had with the witnesses during interrogation at the police station, which included the threats that were made to them by other members of the traveling vice lords. Now, if you were given a retrial, do you think the result would be any different? I believe so, sir. Well, only four people came forward and testified, and only one of them did not recant. I think that there is a lot more going on here than what we see on this record. Well, doesn't usually everybody recant in gang-related episodes? Gangs intimidate people. I mean, how would we ever get a conviction on any case ever? Well, Your Honor, I agree. If Mr. Dixon does receive a new trial, and these witnesses come back in, and if they continue to recant, then I believe their handwritten statements or their videotape or their grand jury testament, perhaps not all three, which I do think is a little bit of a piling, but would come back in to show that they had previously testified to this intimidation. Intimidation with gangs is definitely a problem, and it has to be handled in some way. But it is incumbent upon the court to limit the information that is given to the jury, given the fact that we all acknowledge that this is a very inflammatory subject, especially after a long summer in Chicago. This did occur in July of 2003. So does that answer your question, Your Honor? No, I'm just wondering that on a retrial, maybe he'll get more than 65 years. Well, I guess that would depend upon a number of things, like what occurred while he has been incarcerated, etc. What about the fee order? Did Judge Ford actually find that criteria number four applied, do you recall? Do you know, Your Honor, I don't have the page right in front of me. I do know that he did reference number one, and I do believe that is because of the new Hodges standard that came down. Yeah, number one applies all the time. So I don't have the order right in front of me. The only thing I can say is that, again, that we are not challenging the investigation that Detective Munoz testified to. And I wanted to ask this court to, when they're reexamining the evidence, as co-counsel has requested, that what the jury was present to evaluate was the murder. And it was the judge's duty to ensure that the jury's mind was not clouded by the gang evidence. And Dixon asked this court to reverse the summary dismissal of his post-conviction petition, and remand for second stage with the appointment of counsel. Thank you very much.